My name is Charles Kinnunen. I represent Mr. Tang Zhizhi Tang. And this again is of course a population controlled case. I know the government's counsel had a lot of problems with my representations of the facts of the case, but I stand by them. I believe there's substantial evidence in the record that shows that there was a traditional marriage and it was in 1980. Let me ask you this. Whether or not they had a traditional marriage, my sense is that the I.J. and the B.I.A. treated it as if it were a marriage. And did the government ever argue to the B.I.A. in appealing the I.J.'s decision that this was not a traditional marriage? Mr. Tang No, Your Honor. Not that I'm aware of. Mr. Kennedy So the traditional marriage was before the forced sterilization? Mr. Tang Yes, Your Honor. And we have a line of cases, the Ma case, that recognizes the traditional marriage as providing a protection to the spouse, or the traditional spouse. In 1982 there was the marriage. A few months later then there was. But the first, let's get back to the abortion. The abortion occurred for two reasons, Mr. Tang says. The company made the inspection. She was a worker in a, I believe there's substantial evidence to show that it was a township organization. Ms. Kennedy So now the companies in China that are these townships, they're connected with the government in some way, right? Mr. Tang Yes, Your Honor. Ms. Kennedy And you may have seen that in country reports. Mr. Tang Yes. And to me that's how they are organized. And that's how the cadre get permission to come and enforce the one-child policies through the departments of the government, which are ubiquitous. I mean, just all over the place. And so this is a township organization. She's three months pregnancy test. She's found to be pregnant. And she is taken to the woman's clinic and the fetus is aborted without anesthesia. Ms. Kennedy So the IJ says that Lee voluntarily went to the clinic. Mr. Tang And I don't think there's any evidence in the record that there was a voluntary going to the clinic. Here's the fact pattern here. Ms. Kennedy What's the evidence that compels the contrary finding? Mr. Tang The compulsion to the contrary finding is that she was at work and she was noticed to be pregnant. And so she's told to go report the next day. She's underage and not traditionally married. I mean, and no license to marry. So based on the laws in China, she is forced to go to the abortion. If she doesn't, she'll lose that job at the township. There's plenty of evidence in the State Department reports that other punishments can follow, economic deprivation and the house. So again, we have the Dean case. This is another case where I filed the brief in January of 2005. And the Dean case was decided in November of 2004. I didn't cite to it and neither did the government in this particular instance. But I believe that the Dean case would allow this kind of treatment to be considered a forced abortion. And in this particular case, the judge says, well, I have had people who run away in this instance. Why didn't you run away? Well, in the last case, he did run away and they did run away. In this particular case, they don't run away. And the judge says, if you did run away, maybe we could have given you some more protection. So I believe the Dean case solves a lot of those problems. It's no longer a subjective situation where each individual immigration judge can decide what is forced and what is not. And so also, I believe that the judge brought in the decision, discussed the credibility, and the petitioner was found not credible. But it doesn't say why. There is no real analysis on that immigration judge as to why my client was not credible. And the other part of the claim is the labor case. This particular Chinese man had been in Guam for nine years before he was put in removal proceedings, so he didn't quite reach the cancellation of removal ten-year time limit. But he stayed on Guam because they recovered a substantial judgment against the employer and he helped facilitate money being sent back to the mainland. And the judge says, the letter he had in his wallet, which was a ten-year-old letter from his friend who says, don't come back because you're going to be mistreated. The judge said he would give it no weight, but then in his decision, he discusses it for a paragraph. So I had to make a choice whether to include it in the brief or not to include it in the brief. I included it in the brief because I believe the judge did give it weight, even though the judge said he didn't give it weight. Anyway, the fourth issue is what I believe is important in this case. The evidence, the judge did not make any specific credibility finding, but just summarized that he didn't find the testimony credible. And she screamed during the procedure, Tang was outside, he heard his wife scream as they aborted the baby without anesthesia. Is that common to do abortions without anesthesia? I've seen that argued, and I've seen that in fact patterns, Your Honor, and I think that the Dean case is one where they also had no anesthesia. And I don't, for the life of me, know why they do that. It's an additional form of punishment, I would imagine. And another kind of behavior is persecution. And again, if there's been past persecution, there's the well-founded fear of future persecution in these coerced population control cases. The wife's abortion caused her to have miscarriage later on, and that was discussed. And again, I thank the court for allowing me to make the argument that the Dean case applies in this case. I have no further argument. Thank you. Thank you, counsel. May it please the court, Joan Smiley from the Department of Justice, on behalf of the case. Mr. Tang's claim is based on two events, the abortion that his girlfriend, who is now his wife, had 16 years ago, and the second ground is the fact that he and 99 other temporary workers in Guam filed the labor dispute 15 years ago. With respect to the first ground, the abortion, the board and the immigration judge found that his wife underwent the abortion procedure at her employer's request and that it was not forced upon her. So I assume you're conceding she was his wife at the time. I'm not conceding that. No, the evidence in the record is that they were married on February 28th, 1981. The abortion occurred in, well, in April or May she became pregnant in 1980, and it was performed within three months. Well, neither the BIA nor the IJ seem to go off on any distinction because apparently they had some, they considered themselves married at a traditional marriage, they just didn't have a license from the Chinese government because they were too young, right? That's correct. And the argument wasn't made below, so it's probably way. Yeah, we're not arguing that. Okay, not arguing that. I'm not disputing that. Just to put one more nail in the coffin, I guess, although it doesn't, it's not argued one way or the other, it's quite clear from the factual narrative in Ding that that couple was not married either. And another fact I think that's important for the court to recall is that in this case her employer forced her, or if allegedly forced her, to have the abortion because she was not married and because she was younger than the marriage age of 24. But again, here the board and the immigration judge found that she was not forced, that there was no indication or evidence to suggest that either Mr. Tang or his now wife expressed any opposition to the procedure or made an effort to avoid having it. They were advised on one particular day by her employer that she would have to have it because she was underage, and they complied. They went the next day, she had the abortion, and there was nothing to demonstrate that it was forced upon her. Except that it quite clearly appears that they were simply resigning themselves to what they think is the inevitable. Is that voluntary? Under the facts of the case, this appears to be voluntary in that, as the judge found, they didn't make any attempt to flee, escape, not report to the clinic. Government counsel, I just asked government counsel before you, a number of you from Washington, so is that the rule that the U.S. Department of Justice or Homeless Security is arguing for now? You have to run away or it's not forced? No, Your Honor. The question, the issue really in this case is whether she was forced to have an abortion. What the immigration judge said in this case is that the evidence indicated that she was not forced, and he did mention that she had not run away. He also said that they had expressed no opposition, made no effort to avoid it. So people who like the government policy, who go along with it, have no complaint, no case to stand on. Well, in this instance, she was working for an employer. Whether they had any connection to the Chinese government is not clear in the record. There's nothing to suggest that they were a governmental body. Why would an employer be worried about this? Too many kids in the child care facility? I don't know, but apparently their policy was that since she was younger than the marriage age of 24, they instructed her to have an abortion. But isn't it curious that it's the same policy that the government has? I mean, it seemed to me that the company was simply the agent of the government. That's not clear in the record. Any employer can impose any requirement on an employee, whether it be that, whether it be drug testing. In the United States? You're saying any employer anywhere can actually physically take one of their employees and shoot somewhere and have an abortion without anesthesia? No, that's not what I said, Your Honor. I said that an employer can impose any requirement that they deem appropriate or necessary. For instance, some offices of the United States government require random drug testing. Can you name one office of the United States government that requires abortions? No, not that particular requirement. In fact, I think the administrative policy is contrary to that, right? I was not suggesting that, Your Honor. I think what you're arguing is that the simple fact that the company did it doesn't necessarily mean that they're doing it on behalf of the government. Is that what you're arguing? That's correct. And that's what occurred in this case. The company told her she was to have an abortion. She went and reported the next day to the women's clinic. The second ground that he gives for his asylum claim is that he and 99 other temporary workers filed a labor complaint in Guam in 1991, 15 years ago. And he claims that he stayed in Guam with two other of the individuals who filed the case to track it. And that of the 96 people that returned to China, two were fined. One was fined $4,000, one $5,000. And here the immigration judge found that there was no evidence that these individuals experienced any other reprisals other than perhaps this fine that was imposed. There was no evidence that any harm would come to Mr. Tang in China or that he would have any problems there on the basis of him being one of a hundred people that filed that complaint. Did these two people have any other children at the time of this forced abortion? No, I believe that was the first pregnancy. And then she did have another child within a year later. She first had a miscarriage and then another child. In addition, there was no evidence in the record that his wife has had any problems arising from him having made that complaint against the employer. And on the basis of these two grounds, the administrative authorities found that he simply didn't meet his burden of proof. He didn't demonstrate the requisite persecution as one of a hundred workers who filed this complaint against the employer. On that basis, they denied asylum and we would ask the court to affirm that determination Unless the court has any further questions, the government would rest. All right, thank you very much, counsel. Lynn v. Gonzales will be... Wait, that was Tang, right? No, Tang. All right, sorry. Tang v. Gonzales will be submitted and we will take up Lynn v. Gonzales number 0574130.
judges: Trott Wardlaw W. Fletcher